UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAMONA M. WALLACE, D.O.,            Case No. 1:21-cv-993

    Plaintiff,            HON.

v.

M.G.H. FAMILY HEALTH CENTER
d/b/a MUSKEGON FAMILY CARE,

    Defendant.
_____/

Stephen R. Drew (P24323)
Adam C. Sturdivant (P72285)
DREW COOPER & ANDING
Attorneys for Plaintiff
80 Ottawa Avenue NW, Suite 200
Grand Rapids, Michigan 49503
Phone: (616) 454-8300
Email: sdrew@dca-lawyers.com
Email: asturdivant@dca-lawyers.com
_____/

**COMPLAINT AND JURY DEMAND**

Plaintiff, Ramona M. Wallace, D.O., by and through her attorneys, DREW COOPER & ANDING, states as follows:

## JURISDICTION

1. This whistleblower retaliation action arises pursuant to the federal Enhancement of Contractor Protection from Reprisal For Disclosure of Certain Information, 41 U.S.C. § 4712. This Court has subject matter jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1331 and 41 U.S.C. § 4712(c)(2) (providing in part that "…the complainant may bring a de novo action at law or equity against the contractor or grantee to seek compensatory damages and other relief available under this section in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.") Jurisdiction is specifically conferred on this Court by the aforementioned statutory provisions.

2. The federal subject matter jurisdiction of the Court is invoked pursuant to 28 U.S.C. §1331 because this action is brought for violations of 41 U.S.C. §4712, a federal statute.

3. The jurisdiction of the Court is further invoked pursuant to 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. §1343.

4. The unlawful employment practices alleged in this Complaint were committed within the judicial district of the Western District of the State of Michigan, therefore venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391(b)(2).

5. The Court has personal jurisdiction over Defendant because Defendant is licensed to transact and does transact business in this District and has carried out violations of 41 U.S.C. §4712 in this District.

6. Pursuant to 41 U.S.C. § 4712(c), Plaintiff exhausted all available administrative remedies. On January 23, 2020, the U.S. Department of Health and Human Services, Office of Inspector General, Office of Investigations, issued a letter to counsel for Dr. Ramona

Wallace stating that she had exhausted her administrative remedies with the Office of Inspector General and that she now has the right to pursue a reprisal complaint in court.

7. Equitable and other relief are sought under the aforementioned statutory provisions.

## PARTIES

8. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

9. Plaintiff Ramona M. Wallace, D.O., is a citizen of the United States and the State of Michigan, and resides in the City of Battle Creek, County of Calhoun, which is within the territorial limits of the United States District Court for the Western District of Michigan.

10. Plaintiff Ramona M. Wallace, D.O. was at all relevant times the Chief Medical Officer and contracted employee of Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care.

11. Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care is a federally funded healthcare facility and duly licensed non-profit corporation qualified to do business in the State of Michigan and was at all relevant times conducting business within the City of Muskegon, County of Muskegon, which is within the territorial limits of the United States District Court of the Western District of Michigan.

12. Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care was at all relevant times the employer of Plaintiff Ramona M. Wallace, D.O.

13. Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care is a federal health center program grantee under 42 U.S.C. §254b.

14. As a federal grant recipient, Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care is subject to the whistleblower provisions provided for in 41 U.S.C. § 4712.

## **STATEMENT OF FACTS, CLAIMS, AND VIOLATIONS**

15. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

16. This case arises out of a Plaintiff's protected conduct in protesting gross mismanagement, gross waste of funds, abuse of authority, and specific danger to public health or safety by Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care, a federal grant recipient.

17. At all relevant times, Plaintiff Wallace was the Chief Medical Officer of Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care, and a contracted employee.

18. From 2009 to 2013, Plaintiff was initially hired as a physician at Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care.

19. Around 2013, Plaintiff and a majority of the provider staff left Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care due to a known upcoming HRSA audit, and knowledge and concern over poor practices and alleged corruption. Plaintiff Wallace and others were told that it was an egregious case given the audit and that the facility may very well close.

20. Around February 2016, after the audit, when the facility did not close, Plaintiff Wallace was asked and agreed to come back to Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care as Chief Medical Officer.

21. From February 2016 through 2019, Plaintiff Wallace, as Chief Medical Officer, helped to significantly increase the quality of medical services to the community and received a number of awards from Medicaid services and others. Defendant's services were rated among the top 30 in the nation. Plaintiff Wallace received a number of commendations for her work serving patients in the healthcare community, including the 2016 Molina Healthcare Community

Champion Award.

22. During this same time period, Plaintiff Wallace continued to become aware of numerous alleged and possible improprieties of Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care and CEO Sheila Bridges.

23. Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care, through its management, supervisors, employees, and assigns, began treating Plaintiff Wallace differently than other employees, began slowly removing her job functions, duties, and responsibilities, and otherwise discriminated and retaliated against her for complaining of acts of gross mismanagement, gross waste of funds, abuse of authority, causing substantial and specific danger to public health or safety, and violations of laws, rules, and regulations.

24. Around October or November 2018, Plaintiff Wallace informed Defendant's CEO Sheila Bridges that the clinic was regularly understaffed due to multiple employees being allowed to take FMLA at the same time while giving unsatisfactory reasons for the FMLA requests and still being approved.

25. As the Chief Medical Officer, Plaintiff Wallace explained to Ms. Bridges that patients were not receiving adequate care due to Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care being regularly understaffed. Dr. Wallace explained that allowing employees FMLA leave based on inadequate reasons was a misuse of public funds and a violation of patient rights since understaffing was affecting patient care.

26. Even after Plaintiff Wallace disclosed her concerns, Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care and Defendant's CEO Sheila Bridges did not investigate the matter and/or filter out employees who were abusing FMLA benefits.

27. Around January 2019, given the number of concerns regarding inappropriate actions by the Defendant's CEO, Plaintiff Wallace contacted Vondi Woodbury, Mercy Health Consultant,

to determine why the 2014 HRSA audit did not result in any action.

28. On January 29, 2019, Plaintiff Wallace, as Chief Medical Officer, contacted Jon DeWitte of Congressman William Huizenga's office to discuss her concerns regarding Defendant and to tell him that the actions of Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care and CEO Sheila Bridges were escalating, and that to her knowledge nothing was happening to pursue the corruption and poor management, and that the clinic was losing its capability to function and that it was affecting patient safety.

29. On January 31, 2019, Vondi Woodbury contacted the HRSA Auditor (Rick) to set up phone conference to discuss the 2014 audit on Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care. Upon information and belief, Rick indicated that he knew that HRSA had not taken action on the audit results, and was very disappointed. Rick indicated a willingness to share information and support efforts to have appropriate action taken in light of audit results. He then forwarded the HRSA audit information to Plaintiff Wallace for review.

30. Between November 2018 and February 2019, Plaintiff Wallace had telephone conferences and exchanged emails with Jeff Fortenbacher (Muskegon Healthcare Director) and William Huizenga (U.S. Representative) regarding Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care and CEO Sheila Bridges and the egregious misappropriation of the HRSA Grant, and Medicaid and Medicare Funds.

31. Plaintiff Wallace reported that Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care and CEO Sheila Bridges regularly mismanaged funds and abused her authority as CEO, which affected patient care and safety at the clinic.

32. On February 8, 2019, Plaintiff Wallace contacted Jon DeWitte to follow-up on her request for action or support regarding her concerns. Jon DeWitte gave Plaintiff the contact information

      for Adam Townsend in the United States District Attorney's Office for the Western District of Michigan. Plaintiff then attempted to contact Mr. Townsend.

33. Around February 11, 2019, Plaintiff Wallace reported to Adam Townsend, West Michigan Office of Inspector General, violations and probable criminal activity by Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care and CEO Sheila Bridges.

34. Additionally, around February 12, 2019, Plaintiff Wallace sent an email to Defendant's CEO Sheila Bridges, and to Emmitt Davis in Defendant's Human Resource Department, regarding the egregious misappropriation of the HRSA Grant, and Medicaid and Medicare Funds.

35. After Plaintiff reported her complaints, she was subjected to retaliation by Defendant beginning around February 2019. Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care subjected Plaintiff to acts of retaliation and discrimination, including but not limited to:

    a. Blocking Plaintiff Wallace from receiving new patients;

    b. Monitoring Plaintiff's communications;

    c. Revoking Plaintiff's administrative and network privileges;

    d. Demoting Plaintiff on or around February 19, 2019;

    e. Suspending Plaintiff on or around March 9, 2019 (Plaintiff was told by Emmitt Davis, Human Resource Director, that she is being suspended - - no reason or basis for the suspension was given); and,

    f. Threatening to end Plaintiff's employment, until ultimately Plaintiff's employment was terminated on or around March 20, 2019.

36. This retaliation was an attempt to silence her and harm her professional reputation as a doctor in the community and negatively impact her employment opportunities.

37. Defendant's CEO made false allegations stating that Plaintiff was working concurrently for PrivaMD. Plaintiff was very clear that she was not an employee of PrivaMD.

38. On March 15, 2019, Plaintiff Wallace received a certified letter from Emmitt Davis,

Defendant's Human Resource Director, confirming Plaintiff's suspension and identifying Defendant's progressive discipline policy, stating that this is the second in a progressive discipline problem, and that she was going to be suspended from March 11, 2019 through March 15, 2019.

39. However, to Plaintiff's knowledge, she had not received a first progressive discipline notice for anything and is not aware of one being in her file. Defendant's handbook provides that any discipline must come through Human Resources. There was never any discipline by Human Resources regarding the alleged PrivaMD matter or any other matter.

40. On March 20, 2019, Plaintiff Wallace was notified by Emmitt Davis, Defendant's Human Resource Director, that Plaintiff has been terminated for cause.

41. There was no explanation of the reason or cause for termination whatsoever. Plaintiff Wallace was never told what the reason was and never given the opportunity to respond.

42. Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care terminated Plaintiff's employment on or around March 20, 2019 because of her participation in making protected disclosures to HRSA. *See* 41 U.S.C. § 4712(a).

43. Pursuant to 41 U.S.C. § 4712, Plaintiff filed a whistleblower complaint of reprisal with the Office of Inspector General on August 30, 2019 (Case No. H-19-0-1063-4).

44. On January 23, 2020, the Office of Inspector General notified Plaintiff of her right to withdraw her complaint to pursue reprisal in court.

45. Plaintiff did not withdraw her whistleblower complaint at that time, and the Inspector General continued its investigation.

46. On or around July 2, 2021, Plaintiff made a request to the Office of Inspector General to withdraw her whistleblower complaint so that she could pursue her claims in federal court.

47. On July 6, 2021, the Office of Inspector General approved Plaintiff's request to withdraw

her whistleblower complaint, and the office closed its investigation of this matter.

## WHISTLEBLOWER RETALIATION (DISCRIMINATION) 41 U.S.C. § 4712

48. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

49. The federal Enhancement of Contractor Protection From Reprisal For Disclosure of Certain Information ("the Act"), 41 U.S.C. § 4712, prohibits recipients of federal funds (including contractors, subcontractors, grantees, or subgrantees) from making reprisals against their employees for making protected disclosures.

50. Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care is a federal health center program grantee under 42 U.S.C. §254b.

51. As a federal grant recipient, Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care is subject to the whistleblower provisions provided for in 41 U.S.C. § 4712.

52. Protected disclosures under the Act include: allegations of gross mismanagement of a federal contract or grant; a gross waste of federal funds; or a violation of law, rule, or regulation related to a federal contract or grant; when such disclosures are made to, among other persons, a management official or other employee of the contractor or grantee who has the responsibility to investigate, discover, or address misconduct within the organization. *See* 41 U.S.C.§ 4712(a).

53. Plaintiff engaged in protected activity under the Act.

54. Plaintiff Ramona M. Wallace, D.O. was at all relevant times the Chief Medical Officer and contracted employee of Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care.

55. Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care, through its

management, supervisors, employees, and assigns, began treating Plaintiff Wallace differently than other employees, began slowly removing her job functions, duties, and responsibilities, and otherwise discriminated and retaliated against her for complaining of acts of gross mismanagement, gross waste of funds, abuse of authority, causing substantial and specific danger to public health or safety, and violations of laws, rules, and regulations.

56. Plaintiff's complaints and protected disclosures to Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care under the Act include but are not limited to the following:

   a. Informing Defendant's CEO Sheila Bridges around October or November 2018 that the clinic was regularly understaffed due to multiple employees being allowed to take FMLA at the same time while giving unsatisfactory reasons for the FMLA requests and still being approved;

   b. As the Chief Medical Officer, Plaintiff Wallace explained to Defendant's CEO Sheila Bridges that patients were not receiving adequate care due to Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care being regularly understaffed. Dr. Wallace explained that allowing employees FMLA leave based on inadequate reasons was a misuse of public funds and a violation of patient rights since understaffing was affecting patient care;

   c. After Plaintiff Wallace's continued disclosure of her concerns, Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care and Defendant's CEO Sheila Bridges failed to investigate the matter and/or filter out employees who were abusing FMLA benefits;

   d. Between November 2018 and February 2019, Plaintiff Wallace had telephone conferences and exchanged emails with Jeff Fortenbacher (Muskegon Healthcare Director) and William Huizenga (U.S. Representative) regarding Defendant's CEO Sheila Bridges and her egregious misappropriation of the HRSA Grant, and Medicaid and Medicare Funds;

   e. Plaintiff Wallace reported that Sheila Bridges regularly mismanaged funds and abused her authority as CEO, which affected patient care and safety at the clinic;

   f. Around February 11, 2019, Plaintiff Wallace also reported the same misconduct to Adam Townsend, West Michigan Office of Inspector General; and,

   g. Around February 12, 2019, Plaintiff Wallace sent an email to Defendant's CEO Sheila Bridges, and to Emmitt Davis in Defendant's Human Resource Department, regarding the egregious misappropriation of the HRSA Grant, and Medicaid and Medicare

Funds.

57. After Plaintiff made her protected disclosures and complaints, she was subjected to retaliation by Defendant beginning around February 2019. Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care subjected Plaintiff to acts of retaliation and discrimination, including but not limited to:

   a. Blocking Plaintiff Wallace from receiving new patients;

   b. Monitoring Plaintiff's communications;

   c. Revoking Plaintiff's administrative and network privileges;

   d. Demoting Plaintiff on or around February 19, 2019;

   e. Suspending Plaintiff on or around March 9, 2019; and,

   f. Threatening to end Plaintiff's employment, until ultimately Plaintiff's employment was terminated on or around March 20, 2019.

58. Pursuant to 41 U.S.C. § 4712(c), Plaintiff exhausted all available administrative remedies. On January 23, 2020, the U.S. Department of Health and Human Services, Office of Inspector General, Office of Investigations, issued a letter to counsel for Dr. Ramona Wallace stating that she had exhausted her administrative remedies with the Office of Inspector General, and that she now has the right to pursue a reprisal complaint in court.

59. As a result, Plaintiff has suffered wage loss, the loss of employment benefits, economic loss, damage to her professional reputation, and emotional distress.

## **DAMAGES**

60. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

61. As a direct and/or proximate result of the aforementioned actions and inactions by Defendant, Plaintiff has sustained damages including but not limited to, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption

of her personal life, loss of enjoyment of the ordinary pleasures of living, possible loss of earning capacity, and other damages known and unknown.

62. As a direct and/or proximate result of the aforementioned actions and inactions by Defendant, Plaintiff has been deprived of wages and loss of income (including front pay, back pay, and benefits), loss of earning capacity and other employment benefits, including, but not limited to, prospective retirement benefits, other insurance coverage, holiday and vacation pay, social security insurance, training opportunities, other promotional benefits, other fringe benefits, and, other damages known and unknown, causing Plaintiff to suffer considerable financial distress and hardship.

WHEREFORE, Plaintiff Ramona M. Wallace, D.O. seeks all appropriate damages against Defendant M.G.H. Family Health Center d/b/a Muskegon Family Care arising out of law, equity, and fact for each or all of the above counts where applicable and requests that the trier of fact award Plaintiff all applicable damages, including but not limited to compensatory, exemplary, and/or punitive and all other relief arising out of law, equity and fact according to statutory and common law, including interest, costs, and attorney fees.

Respectfully submitted,

Dated: November 22, 2021     By:   /s/ Stephen R. Drew
                                    Stephen R. Drew (P24323)
                                    Adam C. Sturdivant (P72285)
                                    DREW COOPER & ANDING
                                    Attorneys for Plaintiff
                                    80 Ottawa Avenue NW, Suite 200
                                    Grand Rapids, Michigan 49503
                                    Phone: (616) 454-8300
                                    Email: sdrew@dca-lawyers.com
                                    Email: asturdivant@dca-lawyers.com

## JURY DEMAND

Plaintiff, Ramona M. Wallace, D.O., by and through her attorneys, DREW COOPER & ANDING, demands a trial by jury on all claims set forth above.

Respectfully submitted,

Dated: November 22, 2021      By:    /s/ Stephen R. Drew
Stephen R. Drew (P24323)
Adam C. Sturdivant (P72285)
DREW COOPER & ANDING
Attorneys for Plaintiff
80 Ottawa Avenue NW, Suite 200
Grand Rapids, Michigan 49503
Phone: (616) 454-8300
Email: sdrew@dca-lawyers.com
Email: asturdivant@dca-lawyers.com